# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROBERT B. TRACY,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>*Defendant*. | Civil Action No. 15-655 (RDM) |

## MEMORANDUM OPINION

Robert Tracy believes that he and his wife have been the subject of threats and extortion. He approached the Federal Bureau of Investigation ("FBI") on several occasions to obtain its assistance and to ask if the FBI was involved. Dissatisfied with the FBI's response, Tracy then filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, to obtain his FBI file. When the FBI failed to provide him with any records, he filed this suit in order to compel it to do so. Although the FBI eventually provided Tracy with four pages of responsive records, he remains unsatisfied and asks the Court to compel the FBI to conduct an additional search and to provide him with unredacted versions of the documents it did produce. The case is now before the Court on the parties' cross-motions for summary judgment. For the following reasons, the Court will grant the FBI's motion for summary judgment and deny Tracy's motion for summary judgment.

## I. BACKGROUND

Robert Tracy is an author who lives in Las Vegas, Nevada. Compl. ¶ 3. Beginning in mid-2014, Tracy and his wife Kimberly became concerned that they were the victims of some

kind of conspiracy arising out of Kimberly's political activity.  *See* Dkt. 26 at 9–16.[1]  Although

the details are not entirely clear from the record, it appears that Kimberly came to believe that

some entity had altered or interfered with a bulk mailing she sent out to support her candidacy

for a leadership position with a local union.  *Id.* at 9.  The Tracys asked the U.S. Postal

Inspection Service to initiate an investigation into what they alleged was mail fraud, *see id.* at 90

(Pl.'s Suppl. Mot. Summ. J. ("SMSJ"), Ex. J), and shortly thereafter, they claim, they began to

receive "thinly veiled threats from 'third parties,'" *id.* at 9, regarding their efforts to seek

recourse regarding the alleged fraudulent scheme.

On June 13, 2014, Tracy went to the FBI's Las Vegas field office to complain about the

fraud and the threats.  *Id.* at 9–10; *see also id.* at 73 (Pl.'s SMSJ, Ex. G).  Tracy also states that

he told the FBI that he was "fairly sure that his phone, as well as another household phone

utilized by his spouse[,] were being monitored (tapped)," and also that "there was some type of

unlawful intrusion into [their] home computers."  *Id.* at 10.  Over the summer, Tracy says, he and

his wife continued to receive death threats.  *Id.* at 11–12.[2]  He made several phone calls to the

---

[1]  On June 9, 2016, the Court ordered several of the briefs and exhibits originally submitted by the parties in this matter to be sealed and replaced with redacted versions.  June 9, 2016 Minute Order.  This Opinion cites to the redacted briefs and exhibits filed later that day.

[2]  Specifically, Tracy alleges:

> "Third party" individuals . . . began to ratchet up the extortion and made it clear to the Plaintiff that his spouse better "back down" from any further pursuit of the mail/wire fraud investigation, and they were operating at the behest of the Defendant or that we would both face more repercussions.  Plaintiff was then contacted by two corporations in mid-July, a large retailer and a large bank, and informed that financial fraud was occurring with Plaintiff's credentials and was detected by their security departments.  Both entities indicated that they had a lot of information and gave Plaintiff their internal report numbers and further instructed to file police reports, of which the Plaintiff complied.

*Id.* at 12.

FBI, but apparently did not receive a satisfactory response. *Id.* Sometime during this period, the Postal Inspection Service informed Tracy that it would not pursue his complaint. *Id.* at 90 (Pl.'s SMSJ, Ex. J); *id.* at 92 (Pl.'s SMSJ, Ex. K).

Tracy and Kimberly returned to the FBI's Las Vegas field office in the fall to renew their complaints. Dkt. 26 at 13–14. It appears from the record that Kimberly visited the field office on October 2, 2014, and Kimberly and Tracy visited together on October 8, 2014. *See id.* at 73 (Pl.'s SMSJ, Ex. G). During the second of these visits, Tracy alleges, he told the FBI agent who met with him that "he was of the belief now that the surveillance, monitoring and computer intrusion was so severe and orchestrated that it was potentially occurring from the FBI itself." *Id.* at 13. The agent, who "indicated that he had no previous knowledge" of Tracy or his wife, allegedly stated "that the surveillance, monitoring and computer intrusion may possibly be from another Federal Law Enforcement Agency or even a criminal gang of some type." *Id.* The agent, according to Tracy, appeared to know details about Tracy and his wife that Tracy had not conveyed to him. *Id.* at 13–14. Tracy states that he visited the FBI field office once again in November, but he does not indicate what he said during that visit. *Id.* at 14.

Convinced that the FBI knew more about the fraud, extortion, and surveillance than it was willing to reveal, Tracy and his wife each filed FOIA requests with the U.S. Department of Justice in January 2015. Dkt. 24 at 24 (Def.'s Mot. Summ. J. ("MSJ"), Ex. A); *Tracy v. U.S. Dep't of Justice*, 117 F. Supp. 3d 1, 2 (D.D.C. 2015). Tracy's request sought his "full FBI file," and indicated that he had visited the FBI's Las Vegas field office on at least two occasions and had called the FBI at least once. Dkt. 24 at 24 (Def.'s MSJ, Ex. A). The FBI responded to Tracy's request on January 27, 2015. *Id.* at 29 (Def.'s MSJ, Ex. C). It indicated that it had searched its Central Records System ("CRS") and was "unable to identify main file records

responsive to" Tracy's request.  *Id.*  It did not respond to Kimberly's request at all, and, on

March 19, 2015, she filed suit to compel a response.  *Tracy*, 117 F. Supp. 3d at 2.

Around the same time, Tracy appealed the FBI's conclusion that no responsive records

existed.  Dkt. 24 at 33 (Def.'s MSJ, Ex. D).  In his appeal, he provided additional details about

his contacts with the FBI.  Specifically, his appeal stated:

> Any and all records concerning, regarding or related to myself (Robert B Tracy).
> Including records of communications, contacts and correspondence between
> Robert B Tracy and employees, officials, agents, contractors, and Informants of
> the DOJ, FBI & OHS.  Victim interview FBI office Las Vegas, Nevada 6/23/14,
> 10/08/14, & 11/20/2014.  Interview pertained to being a victim of extortion
> threats/political corruption/lawyer tampering/unlawful surveillance & monitoring,
> call intercept, computer intrusion as well as home "bugging".  Indicated during
> multiple interviews that much of this activity was possibly emanating from the
> FBI or another government agency at the behest of high ranking government
> officials due to a political cover-up.  Indicated that my parents as well as members
> of my immediate family seemed to be under duress and possible victims of
> extortion threats as well.  I also expressed concerns of potential violations of my
> Constitutional and/or Civil rights as well as the same concerns relative to the Las
> Vegas Metropolitan Police Department.

*Id.*  Tracy provided the dates and times of six phone calls he had made to the FBI, as well as the

dates and times of what he described as "potential call intercepts"; provided the numbers of four

police reports he had made to the Las Vegas Metropolitan Police; and provided several "search

indices," including the name of his wife, the surnames of various relatives, and several "related

parties," including the U.S. Postal Service, American Express, and Caesars Entertainment.  *Id.*

The Department failed to respond within the 20-day period specified by FOIA, 5 U.S.C.

§ 552(a)(6)(A)(ii), and Tracy filed this action, proceeding *pro se*.  *See* Dkt. 1.  On May 1, 2015,

the Department's Office of Information Policy ("OIP") (which adjudicates FOIA appeals within

the Department) affirmed the FBI's conclusion that no responsive records existed.  *See* Dkt. 24 at

37 (Def.'s MSJ, Ex. F).  Shortly thereafter, however, in connection with the FBI's handling of

Kimberly's FOIA action, *Tracy*, 117 F. Supp. 3d at 2,[3] the FBI identified two documents (totaling four pages in length) that appeared to memorialize Kimberly's visit to the Las Vegas field office on October 2, 2014, and Tracy and Kimberly's visit to the field office on October 8, 2014. *See* Dkt. 26 at 71–74 (Pl.'s SMSJ, Ex. G). "[A]s a courtesy," the FBI released those records to Tracy in July 2015. *See* Dkt. 24 at 47 (Def.'s Statement of Material Facts ("SMF") ¶ 14); *id.* at 40 (Def.'s MSJ, Ex. G). The FBI withheld portions of the records under Exemptions 6, 7(C), and 7(E). *Id.*

The FBI has moved for summary judgment, arguing that it conducted a reasonable and adequate search and that its withholdings are appropriate under FOIA and the Privacy Act. Dkt. 9. Tracy has cross-moved for summary judgment, arguing that the FBI's search was inadequate and that its withholdings are unlawful. Dkts. 10, 17. Tracy has also moved for leave to file the phone carrier record of one of his calls to the FBI under seal. Dkt. 19.[4]

## II. LEGAL STANDARD

The Freedom of Information Act is premised on the notion that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Act embodies a "general philosophy of full agency disclosure." *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)). It thus mandates that an agency disclose records on request, unless they fall within one

---

[3]  Kimberly never challenged the adequacy of the FBI's search for records or its justifications for withholding portions of those records, and so Judge Chutkan granted the FBI summary judgment in that matter in July 2015. *Tracy*, 117 F. Supp. 3d at 5.

[4]  On April 4, 2016, Tracy also filed a second action against numerous defendants, including the FBI. *See Tracy v. United States*, No. 16-651 (D.D.C. filed Apr. 4, 2016). The merits of that suit are not before the Court in this Opinion.

of nine exemptions.  "These exemptions are 'explicitly made exclusive' and must be 'narrowly

construed.'"  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (quoting *EPA v. Mink*, 410 U.S.

73, 79 (1973), and *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).  As explained further below, the

present dispute turns on the meaning and application of Exemptions 6 and 7.  Exemption 6

protects "personnel and medical files and similar files the disclosure of which would constitute a

clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7 protects

"records or information compiled for law enforcement purposes," *id.* § 552(b)(7), but only if

those records fall within one of the exemption's five sub-parts, two of which are relevant here.

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use

and dissemination of personal information contained in agency records . . . by allowing an

individual to participate in ensuring that his records are accurate and properly used, and by

imposing responsibilities on federal agencies to maintain their records accurately."  *Mobley v.

CIA*, 806 F.3d 568, 585 (D.C. Cir. 2015) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir.

1984)).  Under the Privacy Act, any agency that maintains a "system of records" must provide

information about a person to that person upon request.  5 U.S.C. § 552a(d)(1).  But an agency

may promulgate regulations "to exempt any system of records within the agency" from such a

request, provided that the system meets certain criteria.  *Id.* § 552a(j)(2).  This is because "[t]he

Privacy Act—unlike [FOIA]—does not have disclosure as its primary goal."  *See Henke v. U.S.

Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule

of Civil Procedure 56.  *See, e.g.*, *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175

(D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate

that there are no genuine issues of material fact and that he or she is entitled to judgment as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In a FOIA action, the

agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or

declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and an index

of the information withheld, *Vaughn*, 484 F.2d at 827–28; *Summers v. Dep't of Justice*, 140 F.3d

1077, 1080 (D.C. Cir. 1998).  An agency "is entitled to summary judgment if no material facts

are in dispute and if it demonstrates 'that each document that falls within the class requested

either has been produced . . . or is wholly exempt from the [FOIA's] section requirements."

*Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting

*Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  The Court reviews the agency's decision

*de novo*, and the agency bears the burden of sustaining its action.  5 U.S.C. § 552(a)(4)(B).

### III.  DISCUSSION

Tracy challenges (1) the adequacy of the FBI's search for records responsive to his FOIA

request and (2) the FBI's decision to withhold portions of those records it *did* release pursuant to

FOIA and the Privacy Act.  The Court discusses each issue in turn.

### A.      Search

Tracy first argues that the FBI conducted an inadequate search in response to his FOIA

request.  An agency has an obligation under FOIA to conduct an adequate search for responsive

records.  "An agency fulfills its obligations . . . if it can demonstrate beyond material doubt that

its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v.*

*U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d

540, 542 (D.C. Cir. 1990)).  "In order to obtain summary judgment the agency must show that it

made a good faith effort to conduct a search for the requested records, using methods which can

be reasonably expected to produce the information requested."  *Oglesby v. U.S. Department of*

*Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Although the agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested," it need not "search every record system."  *Id.*  The agency can show that it conducted an adequate search by relying on "[a] reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to obtain responsive records (if such records exist) were searched."  *Valencia-Lucena*, 180 F.3d at 326.

The FBI supports its motion with the declaration of David Hardy, the section chief of the FBI division that processes FOIA requests.  Dkt. 24 at 3–22 (Hardy Decl.).  Hardy explains that the FBI searched its Central Records System ("CRS") for records that might be responsive to Tracy's request.  *Id.* at 6, 10 (Hardy Decl. ¶¶ 13, 22).  CRS is "an extensive system of records" that "spans the *entire* FBI organization," including the FBI's field offices.  *Id.* at 6 (Hardy Decl. ¶ 13) (emphasis added).  CRS files are "indexed" in two ways.  *Id.* at 7 (Hardy Decl. ¶ 15).  Each file has a "main" entry, corresponding to "the main subject(s) of" the file.  *Id.*  A file may also contain a "cross-reference" entry, indicating that some other person, organization, or event is referenced in the file.  *Id.*  The FBI uses the Automated Case Support ("ACS") system to organize CRS records.  *Id.* at 7–8 (Hardy Decl. ¶ 17).  ACS contains a Universal Index ("UNI") tool that allows the FBI to search all CRS records indexed in ACS—"approximately 111 million searchable records."  *Id.* at 8 (Hardy Decl. ¶ 18).  Since 2012, the FBI has also conducted FOIA searches in its advanced case management system, Sentinel.  *Id.* at 9 (Hardy Decl. ¶ 19).

According to Hardy, when Tracy submitted his initial FOIA request, the FBI conducted searches in UNI and Sentinel for both "main" and "cross-reference" records using two variants on Tracy's name ("Tracy, Robert B." and "Tracy, Robert").  *Id.* at 10 (Hardy Decl. ¶ 22).  Hardy states that the FBI "did not identify any *main* file indexed to [Tracy's] name," but did identify a

*cross-reference* file indexed to Tracy's name—that is, a file indexed primarily under someone else's name that contained a reference to Tracy. *Id.* (emphasis added). The FBI did not provide this file to Tracy because it did not "pertain to any visit or telephone call" that Tracy had *specifically* listed in his initial FOIA request. *Id.* Hardy states that the FOIA analyst who processed Tracy's request also called the FBI's Las Vegas field office to determine whether any recording of the call that Tracy referred to in his original request existed, but was told that the field office does not record calls from complainants. *Id.* (Hardy Decl. ¶ 23).

As Hardy explains, however, the FBI eventually decided to produce the record indexed to Tracy's name. Hardy says that when Tracy filed this suit, the FBI "conducted another search of the CRS index via [UNI] and Sentinel." *Id.* at 11 (Hardy Decl. ¶ 24). That search did not reveal any additional records. *Id.* In the course of the search that the FBI conducted in *Kimberly's* case, however, it located a second record that is not indexed to Tracy's name but that nonetheless refers to him. *Id.* Hardy states: "Although neither [file] pertains to either of the visits and/or the . . . call specifically listed by [Tracy] in his request letter, the FBI processed and released" both files to Tracy. *Id.*

Tracy identifies three reasons why the FBI's search in this matter was inadequate.[5] First, he argues, the FBI construed his search too narrowly. Because Tracy requested only his "FBI file" in his original request, *see id.* at 24 (Def.'s MSJ, Ex. A), the FBI interpreted his request to seek only *main* files indexed to his name, not files that merely contained cross-references to his name. *See id.* at 58–59; *id.* at 9–10 (Hardy Decl. ¶¶ 20, 22) (describing the FBI's policy of "search[ing] for and identify[ing] only 'main' files responsive to most [FOIA] requests at the

---

[5] Tracy in fact identifies "six reasons" why the FBI's search was inadequate, *see* Dkt. 26 at 18, but the Court has endeavored to categorize similar reasons together, construing Tracy's claims as liberally as is reasonable.

administrative stage").  Tracy argues that the FBI's interpretation of his request was overly narrow, because his references to his visits the FBI's Las Vegas field office (and the additional details he provided on appeal) made clear that he was seeking information that might not be available in his "main" file.  *See* Dkt. 26 at 18.  Indeed, Tracy argues, the FBI does not set out its reasons for interpreting his request for his "FBI file" to refer only to main references, to the exclusion of cross-references.  *Id.*

The parties do not identify any caselaw that addresses whether it was reasonable for the FBI to have initially searched only for *main* files regarding Tracy, and the Court has found none. The FBI states that its standard policy is to "search for and identify only 'main' files responsive to most [FOIA] requests at the administrative stage."  Dkt. 24 at 9 (Hardy Decl. ¶ 20).  But as a general matter, an agency is obligated "to construe a FOIA request liberally," *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), and it is far from clear to the Court that most FOIA requesters intend the FBI to search only for 'main' files when they request their "full FBI file."  Nonetheless, there is no reason for the Court to consider the question in any greater depth here, because the FBI *did* ultimately produce other records that were cross-referenced to Tracy's name.  *See* Dkt. 24 at 11 (Hardy Decl. ¶ 24).  Whether or not its initial interpretation of Tracy's request was overly narrow, that is, the FBI ultimately produced records that rest on a reasonable interpretation of that request.[6]

---

[6]  The FBI maintains that its original interpretation of Tracy's request was reasonable, and that "arguably none of the released pages are even responsive to [Tracy's] request."  Dkt. 24 at 60. That contention is dubious.  Tracy's original FOIA request explicitly referenced his visits to the Las Vegas field office to file a report.  And in his appeal, Tracy clarified that he sought "[a]ny and all records concerning, regarding, or relating to" himself, and he expressly sought records relating to the "[v]ictim interview" in Las Vegas that occurred on October 8, 2014, *see id.* at 33 (Def.'s MSJ, Ex. D), which is one of the visits that the second record produced by the FBI

Second, Tracy argues, the FBI should have used more of the search terms that he suggested.  Although Tracy initially requested his "FBI file," on appeal he listed many additional "search indices" for the FBI to consider, including twelve dates on which he contacted the FBI in person or via phone, four Las Vegas Metropolitan Police report numbers, and the names of "possibly related parties" and several "possibly related" businesses.  *See* Dkt. 24 at 33 (Def.'s MSJ, Ex. D).  It is undisputed that the FBI never utilized any of these search terms.  Nor does it appear from the record that the FBI conducted a search using Tracy's date of birth or Social Security number, both of which Tracy provided in his original request.  *See id.* at 25 (Def.'s MSJ, Ex. A).  Tracy argues that it was "unreasonable" for the FBI not to have done so.

Although this, too, is a closer question than the FBI suggests, the Court agrees that it was reasonable for the FBI not to have utilized these additional search terms.  As Hardy explains, the FBI indexes its records by individuals' names, organizations' names, and events.  *Id.* at 7 (Hardy Decl. ¶ 16).  Because Hardy's request clearly sought "information pertaining to himself," the FBI concentrated on those search terms most likely to produce information regarding Tracy himself—variants on his name.  *Id.* at 11 (Hardy Decl. ¶ 25).  Most of the search terms that Tracy suggested, by contrast, appear unlikely to lead the FBI to locate records about Tracy.  It is hard to see how a search for "American Express" or "Caesars Entertainment," for example, would have led the FBI to locate any responsive records—unless, of course, the FBI were to *also* limit those records by including Tracy's name as a search term.  To the extent Tracy suggests that the FBI should have "used conjunctive searches rather than simply searching for documents

---

describes, *see* Dkt. 26 at 73 (Pl.'s MSJ, Ex. G).  Thus even if the FBI might have reasonably concluded *before* Tracy appealed that the cross-referenced records were not responsive to his request, it was clear *after* he appealed that those records were. In its decision on Tracy's appeal, moreover, OIP did not suggest that Tracy's "*clarification*" actually constituted an *expansion* of the request.  *See* Dkt. 24 at 37–38 (Def.'s MSJ, Ex. F).

containing [his name], such a search would have revealed *fewer* records than those the [FBI]

actually produced."  *Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355, 363 (D.D.C. 2015).

Not all of the search terms Tracy suggested were this far afield.  In particular, Tracy's

suggestion that the FBI search for his Social Security number, his date of birth, or the dates on

which he visited the FBI's Las Vegas office might seem more likely to have produced records

responsive to his request.  But agencies "have discretion in crafting a list of search terms that

'they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request.'"

*Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) (quoting

*Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009)).

Tracy points to no basis to conclude that a search for these additional terms would have been

likely to yield records that were not found by searching for his name.  Especially in light of the

fact that the FBI's original search *did* produce records documenting two visits to the FBI's Las

Vegas field office, the Court finds that the FBI's determination that the additional terms would

not have produced additional results was a reasonable one under the circumstances.  To the

extent that Tracy seeks records relating to the various individuals and entities identified in his

"search indices," he is, of course, free to file a FOIA request for such records.

Third, and most emphatically, Tracy argues that the FBI's search was inadequate because

it did not result in the production of any records relating to either his first visit to the FBI, in June

2014, or any of his phone calls.[7]  *See* Dkt. 26 at 20–26.  He argues, among other things, that the

records the FBI *did* produce, as well as cell-phone records he attaches to his motion for summary

judgment, demonstrate that he both visited the FBI in June 2014 and made numerous calls to FBI

---

[7]  The Court assumes for purposes of this decision that Tracy made the phone calls he alleges.
As a result, it need not rely upon the additional phone carrier records Tracy seeks to file under
seal, and will thus deny Tracy's motion for leave to file those records, Dkt. 19.

agents between June 2014 and February 2015.  *See id.* at 73 (Pl.'s MSJ, Ex. G) (reference to a

"complaint filed initially on June 23, 2014"); *id.* at 50–68 (Pl.'s MSJ, Exs. E, F) (cell-phone

records).  Tracy's argument, in essence, is that because he can demonstrate that he contacted the

FBI on these dates, that he completed a "questionnaire" at the field office, and that he provided

the FBI with certain materials, Dkt. 26 at 6, the fact that the FBI has not produced any records of

those contacts means that the FBI has failed to conduct a reasonable and adequate search of its

files.  *See* Dkt. 18 at 4 ("This case is about how you can have (3) in person victim interviews and

nearly (75) minutes of victim calls to the Defendant and not have a single instance of follow up

contact from the Defendant . . . .").

In light of his repeated contacts with the FBI, Tracy's argument is not an unreasonable

one.  The problem for Tracy is that, as the D.C. Circuit has held, "the adequacy of a FOIA search

is generally determined not by the fruits of the search, but by the appropriateness of the methods

used to carry out the search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C.

Cir. 2003).  To the extent that Tracy is simply dissatisfied with the *results* of the FBI's search,

his challenge to the FBI's search must fail.  *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548,

552 (D.C. Cir. 1994) ("[M]ere speculation that as yet uncovered documents may exist does not

undermine the finding that the agency conducted a reasonable search." (internal quotation marks

omitted)).  Nor do Tracy's broader complaints with the FBI have traction.  For instance, Tracy

argues at length that if the FBI's Las Vegas field office in fact failed to make a record of his

visits and phone calls in 2014 and 2015, it may have violated an FBI policy—or, failing that, that

it may have acted contrary to common sense.  *E.g.*, Dkt. 26 at 26 ("It seems nothing short of

preposterous . . . that the FBI Las Vegas field office does not record incoming phone calls.").

But FOIA does not require agencies to create records that do not exist, and it is not a tool for requesters to improve agencies' internal practices and procedures.

In sum, the Court concludes that the FBI conducted a reasonable and adequate search in response to Tracy's request for his FBI file.

**B.     Withholdings**

Tracy submitted his request for records pursuant to both the Privacy Act and FOIA.  *See* Dkt. 24 at 27 (Def.'s MSJ, Ex. B).  Because the two statutes "state that access to records under each is available without regard to exemptions under the other," in order to withhold records, an agency "must demonstrate that the documents fall within some exemption under *each* Act."  *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  Here, the FBI maintains, and Tracy does not genuinely dispute, that *all* records responsive to his request were properly withheld from disclosure under the Privacy Act.  *See* Dkt. 24 at 61–62; *see generally* Dkts. 25, 26.  Accordingly, the Court will briefly discuss the FBI's basis for withholding records under the Privacy Act, and then turn to the parties' dispute about whether the FBI's actions complied with FOIA.

1.      *Privacy Act*

The Privacy Act "requires any agency that maintains a 'system of records' to provide information pertaining to a particular person to that person when he or she asks to access it."  *Mobley*, 806 F.3d at 585.  But the Act also permits agencies to "exempt certain records within a system from disclosure."  *Henke*, 83 F.3d at 1457–58.  One Privacy Act exemption, Exemption (j)(2), permits an agency to exempt a system of records if (a) the agency's principal function is criminal law enforcement and (b) the system consists of one of three types of information, including, as relevant here, "information compiled for the purpose of a criminal investigation,

including reports of informants and investigators, and associated with an identifiable individual." 5 U.S.C. § 552a(j)(2); *see Mobley*, 806 F.3d at 586.  The Justice Department has promulgated a regulation exempting the FBI's CRS system from the Privacy Act.  *Id.*; *see* 28 C.F.R. § 16.96(a).

Although the FBI has exempted its CRS system from the Privacy Act's requirements, it has nonetheless qualified that exemption by providing that it applies only to information "subject to exemption" under the Act.  28 C.F.R. § 16.96(a).  The D.C. Circuit has interpreted this proviso to require the FBI to prove "that the record [sought to be withheld] is a law enforcement record within the meaning of the Privacy Act."  *Mobley*, 806 F.3d at 586; *see also Vymetalik v. FBI*, 785 F.2d 1090, 1095 (D.C. Cir. 1986).  Under the Privacy Act (and under FOIA), a record qualifies as a "law enforcement" record if (1) "the agency's investigatory activities that g[a]ve rise to the documents . . . were related to the enforcement of federal laws or to the maintenance of national security" and (2) "the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of its rationality." *Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir. 1991) (quoting *Pratt v. Webster*, 673 F.2d 408, 420– 21 (D.C. Cir. 1982)).

It is plain that the records that the FBI released to Tracy are "law enforcement records" under the Privacy Act.  Hardy states that the records "were specifically compiled in response to a complaint regarding potential violations of federal laws concerning public corruption," a claim that Tracy does not dispute.  *See* Dkt. 24 at 13 (Hardy Decl. ¶ 28); Dkt. 26 at 19 (asserting that Tracy is a "victim of extortion and Public corruption").  The records were thus compiled by the FBI in furtherance of its federal law enforcement mission.  *Accord Mobley*, 806 F.3d at 586; *Doe*, 936 F.2d at 1354–55.  Tracy does not appear to contest that the produced records qualify as "law enforcement records," *see* Dkt. 26 at 30, nor, based on this record, could he reasonably do

so.  Accordingly, the FBI has established that the records that it released to Tracy (in a redacted

form) were protected in full by the Privacy Act.

>       2.      *FOIA*

Tracy does contest the propriety of the FBI's decision to redact portions of the released

documents under FOIA Exemptions 6, 7(C), and 7(E), as well as the FBI's assertion that it has

released all reasonably segregable material in these records.  The Court takes each argument in

turn.

>       a.      Exemptions 6 and 7(C)

FOIA Exemptions 6 and 7(C) are privacy exemptions.  Exemption 6 shields "personnel

and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) protects those "records or

information compiled for law enforcement purposes" the disclosure of which "could reasonably

be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  The

two exemptions protect similar interests, but they differ in scope.  Exemption 7(C) applies only

to "records compiled for law enforcement purposes."  *Id.*  "And because Exemption 7(C) permits

withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal

privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure,

'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower

bar for withholding material."  *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011)

(quoting *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 496 n.6 (1994)).

Here, the Court has already concluded that the records the FBI produced to Tracy were

"law enforcement records" for the purposes of the Privacy Act.  *See supra* p. 15.  The records are

also therefore "records compiled for law enforcement purposes" under FOIA.  *See Doe*, 936 F.2d

at 1354 (explaining that the two standards are the same).  Accordingly, the Court will evaluate

the FBI's decision to withhold portions of these records only under Exemption 7(C), because "it

provides broader privacy protection than Exemption 6."  *See CREW v. U.S. Dep't of Justice*, 746

F.3d 1082, 1091 n.2 (D.C. Cir. 2014).  The FBI withheld three categories of information under

Exemption 7(C): (i) the names of FBI employees, (ii) the names of several third parties "merely

mentioned" in the record (that is, third parties *not* of investigative interest to the FBI), and (iii)

the names of third parties of investigative interest to the FBI.  *See* Dkt. 24 at 67–70; *id.* at 16–20

(Hardy Decl. ¶¶ 37–41).  The Court concludes that the FBI's assertion of Exemption 7(C) was

proper as to all three categories of information.

        The D.C. Circuit and other judges of this Court have consistently allowed the FBI to

withhold the names of FBI employees and third parties under Exemption 7(C).  As the D.C.

Circuit has explained, it has adopted "a categorical rule permitting an agency to withhold

information identifying private citizens mentioned in law enforcement records, unless disclosure

is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in

illegal activity.'"  *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661–62 (D.C. Cir. 2003)

(quoting *SafeCard Servs.*, 926 F.2d at 1206).  This protection has generally been afforded to the

names of agency employees, as well, for similar if not identical reasons.  *See Lesar v. U.S. Dep't*

*of Justice*, 636 F.2d 472, 487–88 (D.C. Cir. 1980) (concluding that Exemption 7(C) protects the

names of FBI agents because the agents could face "public exposure or possible harassment");

*see also Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011); *Schrecker*, 349

F.3d at 661.  So it is clear that the FBI acted within the confines of FOIA in redacting the names

of FBI employees and third parties in the records it released to Tracy.

Tracy levies several objections to this conclusion, but each misses the mark.  Although Tracy concedes that the records he seeks "might relate to 'law enforcement purposes,'" Dkt. 26 at 30, he appears to argue that the FBI has failed conclusively to establish that fact because it has not identified the specific investigation, by case or by case number, that the records were compiled in furtherance of, *id.* at 29.  But the FBI is under no obligation to do so; it need only show that it compiled the records in furtherance of its mission to enforce federal laws, *see Pratt*, 673 F.2d at 420–21.  Tracy also argues that Exemption 7(C) does not apply here because he "does not seek 'personal' information regarding any particular individual" but rather "information concerning these individuals['] . . . interactions with Plaintiff, the 'authority' with which they were acting[,] . . . and why Plaintiff was targeted and exposed to criminal conduct by" them.  Dkt. 26 at 30.  But even presuming the FBI withheld personal identifying information about any of the people that Tracy believes threatened or extorted him, the D.C. Circuit has made clear that the privacy interests of such persons outweigh any interest Tracy has in learning their identities.  If Tracy believes the FBI has redacted information that would *not* identify these persons, moreover, he has provided no evidence with which to discredit Hardy's assertion that the FBI withheld only names and identifying information pursuant to Exemption 7(C).[8]

Accordingly, the Court concludes that the FBI properly withheld information pursuant to Exemption 7(C).

---

[8]  Further, to the extent that Tracy's complaint is that the FBI withheld *other records* that might contain relevant information, he is mistaken.  As the FBI explained in its responses to his FOIA requests, the four pages that it provided Tracy were the only records it located that might have been responsive to his request.  The FBI invoked Exemption 7(C) only to withhold parts of those four pages; it did not invoke it to withhold additional pages in full.

b.      Exemption 7(E)

The FBI also withheld the address of an internal FBI website on each of the records that it provided to Tracy pursuant to Exemption 7(E).  *See* Dkt. 24 at 20–21 (Hardy Decl. ¶¶ 42–45). Exemption 7(E) shields "records or information compiled for law enforcement purposes" if the disclosure of that information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The D.C. Circuit has explained that "Exemption 7(E) sets a relatively low bar for the agency to justify withholding."  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  To clear that "relatively low bar," an agency must show only that the release of a record might increase the risk "that a law will be violated or that past violators will escape legal consequences."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

The FBI argues that the disclosure of its internal website addresses would increase the risk of cyberattacks.  *See* Dkt. 24 at 71–72; *id.* at 21 (Hardy Decl. ¶ 45).  Specifically, the FBI explains that, armed with the FBI's internal website addresses, "criminals capable of cyber attacks" would "know where to go in the FBI's computer system to disrupt or undermine FBI counter-terrorism initiatives," which in turn "could result in an increase in violence, crime, or the destruction of property by terrorists."  *Id.* at 21 (Hardy Decl. ¶ 45).  The Court agrees with the other judges on this Court to have considered the question that this possibility clears the "low bar" established by Exemption 7(E).  *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 78 F. Supp. 3d 508, 520 (D.D.C. 2015); *Labow v. U.S. Dep't of Justice*, 66 F. Supp. 3d 104, 113 n.2 (D.D.C. 2014).

Tracy's only arguments to the contrary are not on point.  He argues again that the FBI has failed to pinpoint with sufficient specificity the investigation that the records it released were compiled in service of, Dkt. 26 at 31, but as the Court has explained, the FBI was not required to do so.  Tracy's contention that "Exemption 7(E) should not be a shield from litigation" in light of the fact that he has "potentially been under unlawful surveillance and monitoring, including surveillance of his residence for almost two years by [the FBI]," *id.* at 31–32, has no bearing on this FOIA suit, even if he could substantiate it with record evidence.

Accordingly, the Court concludes that the FBI properly withheld information pursuant to Exemption 7(E).

c.    Segregability

Tracy finally gestures at a challenge to the FBI's assertion that it released all reasonably segregable records in response to his request.  FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions [that] are exempt."  5 U.S.C. § 552(b).  Here, the FBI redacted the material from the four pages it released to Tracy that it believed was exempt under FOIA, and released the remainder of the pages.  *See* Dkt. 24 at 21–22 (Hardy Decl. ¶ 46).  Tracy argues that the FBI's statement on segregability is "conclusory" and "boilerplate," but his objection is not really that the FBI has failed to segregate exempt information from non-exempt information; it is that the FBI has not produced all of the records that he believes exist.  *See* Dkt. 26 at 32 (arguing that the FBI "does not declare how many 'total' records were responsive" but instead "only states that 4 pages could be released").  That is, Tracy's argument goes not to the question whether the FBI has produced all reasonably segregable portions of the records it released, but the question

whether the FBI's search for those records was adequate and reasonable.  For the reasons the Court has already explained, *see supra* pp. 7–14, it was.

Whether or not Tracy raises a segregability challenge, however, the Court has a duty to "make specific findings of segregability regarding the documents to be withheld . . . even if the requester did not raise the issue of segregability before the court."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).  The Court has no trouble concluding that the FBI complied with FOIA's segregability requirement.  That requirement generally has teeth only where the agency has chosen to withhold pages or documents in full rather than trying to redact those parts of pages that contain exempt material.  Here, the FBI redacted what was exempt and released the remainder of the records.  FOIA requires no more.

## CONCLUSION

For these reasons, the Court will grant the FBI's motion for summary judgment, deny Tracy's motion for summary judgment, and deny Tracy's motion for leave to file records under seal.  A separate Order will issue.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  June 10, 2016